Adam L. Hoyt (#13463)
Scott R. Hoyt (#14558)
PIA HOYT, LLC
170 S. Main Street, Suite 1100
Salt Lake City, Utah 84101
Tel.: (801) 350-9000
shoyt@piahoyt.com
ahoyt@piahoyt.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MID-CENTURY INSURANCE COMPANY, a California corporation,<br><br>Plaintiff,<br>v.<br><br>COSTCO WHOLESALE CORPORATION, a Washington corporation, and WASATCH LAWNS & LANDSCAPE, L.L.C., a Utah limited liability company,<br><br>Defendants. | **COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>Case No.: 2:25-cv-00816 |

Plaintiff Mid-Century Insurance Company, by and through counsel of record, hereby complain, allege, and pray for relief against Defendants Costco Wholesale Corporation and Wasatch Lawns & Landscape, L.L.C. as follows:

## PARTIES

1. Mid-Century Insurance Company ("***Mid-Century***" or "***Plaintiff***") is a duly authorized insurance company incorporated under the laws of the State of California with its principal place of business in Woodland Hills, California, and doing business in the State of Utah.

1

2. Costco Wholesale Corporation ("**Costco**") is a Washington corporation with its principal place of business in Issaquah, Washington, and doing business in the State of Utah.

3. Specifically, Costco operates at approximately fourteen locations in Utah, including one located at 5201 Intermountain Drive, Murray, Utah 84107 (the "**Murray Costco**") where some of the events giving rise to this action occurred.

4. Wasatch Lawns & Landscape, L.L.C. ("**Wasatch**") is a Utah limited liability company, with its principal place of business in Murray, Utah.

5. Costco and Wasatch may be collectively referred to as "**Defendants**."

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000.

7. Specifically,

    a. Mid-Century is a citizen of the State of California;

    b. Costco is a citizen of the State of Washington;

    c. Wasatch is a citizen of the State of Utah; and

    d. The amount in controversy is for more than $300,000.[1]

8. The Court has personal jurisdiction over Costco because the claims arising out of or related to Costco's activities occurred within the State of Utah—to wit: the Murray Costco.

9. The Court has personal jurisdiction over Wasatch because it is a citizen of the State of Utah.

---

[1] Heather J. Van Boerum and Don H. Van Boerum allege that their damages against Costco exceed $300,000 in a lawsuit filed in the State of Utah that will be further explained below.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because at least one defendant, Wasatch, resides in this District and a substantial part of the events giving rise to the claim occurred in this District including where the underlying litigation was filed.

11. Moreover, Mid-Century issued liability insurance to Wasatch in the form of Policy No. 60719-53-22, with coverage effective dates of March 18, 2021 to March 18, 2022 (the "*Policy*"). A true and accurate copy of the Policy is attached hereto as Exhibit 1.

12. By entering into the Policy, the Parties acknowledged the coverage Mid-Century was providing would necessarily include activities conducted within the State of Utah as Wasatch's primary business operations occur within the State of Utah including at the Murray Costco.

## GENERAL FACTUAL ALLEGATIONS

13. Mid-Century incorporates each of the allegations set forth above as though fully set forth herein.

**A. Wasatch and Costco's Relationship**

14. Wasatch removes snow for large business parking lots.

15. Costco contracted with Wasatch for its snow removal services.

16. That contract is memorialized by the "*Vendor Agreement*", attached hereto as Exhibit 2.

17. Under the Vendor Agreement, Wasatch agreed to indemnify Costco for liabilities arising out of Wasatch's snow removal services and to add Costco to its policy with Mid-Century for such liabilities.

### B. The Incident

18. This Declaratory Judgment action arises from a lawsuit (the "**Boerum Lawsuit**") Heather J. Van Boerum and Don H. Van Boerum filed against Costco and Steven L. Gustavson arising from an incident which occurred on December 20, 2021 in the Murray Costco parking lot. A copy of the Complaint ("**Compl**.") in the Boerum Lawsuit is attached here as Exhibit 3.

19. On December 20, 2021, Heather Van Boerum ("**Heather**") was walking from her parked car in the Costco parking lot towards the store's entrance when she was hit by a car driven by Defendant Steven Gustavson ("**Driver**") and crushed between his car and another vehicle ("**Incident**"). [Compl. ¶¶ 8, 14, 17.]

20. As a result of the Incident, Heather sustained serious injuries, including below the knee amputations, broken bones, a pelvis fracture, a concussion, and extreme pain. [*See* Compl. ¶¶ 18, 21.]

21. Heather and her husband, Don H. Van Boerum ("**Don**"), subsequently sued Costco and the Driver, alleging causes of action for negligence, premises liability, and loss of consortium. [*See generally*, Compl.]

22. Wasatch is not identified as a defendant in the Boerum Lawsuit, and as such, there are no allegations against Wasatch. [*See generally*, Compl.]

23. The Boerum Lawsuit's claims against Costco are solely based on Costco's alleged defective parking lot design. [Compl. ¶¶ 11–12, 15–16, 24–25, 31–34.]

24. For instance, the Boerums allege "[d]espite the numerous traffic incidents that occur in Costco . . . parking lots across the country and how busy the Murray Costco was, Defendant Costco did not provide any sidewalks or other designated pedestrian pathways from the area of the parking lot to the Murray Costco's entrance." [Compl. ¶ 15.]

4

25. There are no allegations in the Complaint about inadequate snow or ice removal from the parking lot. [*See generally*, Compl.]

26. In fact, there is no mention of snow or ice in the Complaint. [*See generally*, Compl.]

**C. The Policy**

27. As articulated above, Mid-Century issued liability insurance in the form of the Policy to Wasatch in the form of Policy No. 60719-53-22, with coverage effective dates of March 18, 2021 to March 18, 2022 with limits of $1,000,000.00 per occurrence and $2,000,000.00 in the aggregate.

28. The Policy includes the Businessowners Liability Coverage Form (BP 00 06 01 97).

29. The insuring agreement in the Businessowners Liability Coverage Form (BP 00 06 01 97) is modified by the Personal and Advertising Injury Coverage Amendatory Endorsement (E3342 ED2), which replaces the terms "personal injury" and "advertising injury" with the term "personal and advertising injury".

30. The Policy also includes the Limitations Of Coverage – Amendment Of Policy Limits And Change In Definitions (E3341 ED3) which replaces the definitions of "bodily injury", "occurrence", and "property damage", and adds the definition of "claimant". These modifications are reflected in the following, in relevant part:

    a. "Throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations. The words 'we', 'us' and 'our' refer to the Company providing this insurance."

    b. "The word 'insured' means any person or organization qualifying as such under Section C – Who Is An Insured."

31. The Policy's named insured is Wasatch.

32. By Endorsement No. 005, Costco was added as an additional insured to the same terms and conditions of the Policy insuring Wasatch.

33. The Policy also contains the following provisions related to Mid-Century's coverage related to this case:[2]

> **BUSINESSOWNERS LIABILITY COVERAGE FORM (BP 00 06 01 97)**
> **A.   Coverages**
>    **1.   Business Liability**
>
>       **a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", or "personal and advertising injury" to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>
>       **b.**   This insurance applies:
>       **(1)**   To "bodily injury" and "property damage" only if:
>
>           **a)**   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
>           **b)**   The "bodily injury" or "property damage" occurs during the policy period.
>       **(2)**   To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.
>                               \*   \*   \*   \*
>
> **F.   Liability And Medical Expenses Definitions**

---

[2] By referring to only certain policy terms, Mid-Century does not waive its right to assert any and all terms, conditions, limitations, exclusions or other provisions of the Mid-Century Policy. No action by or on behalf of Mid-Century shall waive any of Mid-Century's rights under the Mid-Century Policy or applicable law.

*   *   *   *

3. "Bodily injury" means bodily injury, sickness or disease caused by an "occurrence" including death resulting from such "bodily injury".

*   *   *   *

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in "bodily injury" or "property damage" that first occurs during the policy period and is neither expected nor intended by any "insured". "Bodily injury" and "property damage" first occurs during the policy period only if:

    a. The "bodily injury" or "property damage" is first sustained by a person or entity during the policy period as the direct result of an accident that first occurs during the policy period; and/or

    b. The "bodily injury" or "property damage" actually is, or reasonably should be, first apparent during the policy period to any "insured", additional insured, or any "claimant".
    "Occurrence" does not include:
    a. Any accident, accidentally caused condition or continuous or repeated exposure to the same general harmful conditions that first occurs before the start of the policy period, or first occurs after the end of the policy period.
    b. "Bodily injury" or "property damage" that arises out of or is a result of any breach of a written or oral contract, or any breach of an express or implied warranty. This does not apply to liability for damages:
        1) Assumed in a contract or agreement that is an insured contract; or
        2) That the insured would have had in the absence of the contract or agreement.

*   *   *   *

16. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged.

    "Suit" includes:
    a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or
    b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

*   *   *   *

22. "Claimant" means a person or entity who makes a claim or brings a "suit" against any "insured" or additional insured.

\* \* \* \*

34. In addition, the following exclusion is found within Section B. Exclusions, of the Mid-Century Policy under the **Multiple or Enhanced Damages Exclusion endorsement (E2042, 2nd Ed.)**:

1. Applicable to Business Liability Coverage

    This insurance does not apply to:

    \* \* \* \*

    r.  Multiple Or Enhanced Damages Because of "Bodily Injury", "Property Damage", or "Personal and Advertising Injury".

        The enhanced or multiple amount of damages awarded against any insured including, but not limited to, double or treble damages, whether or not awarded as compensation, because of "bodily injury", "property damages" or "personal and advertising injury".

    s.  Taxes, Fines or Penalties

        Taxes, fines or penalties that are awarded or imposed against any insured.

        \* \* \* \*

35. The Policy also contains the following provisions related to Costco being an additional insured:

    **Endorsement No. 005 (E4277)**

    **Additional Insured – Owners, Lessees or Contractors**

    A. The following is added to Paragraph **C. Who is an Insured** of the applicable Coverage Form:

        Any person(s) or organization(s) for whom you are performing operations is also an additional insured, if you and such person(s) or organization(s) have agreed in writing in a contract or agreement that such person(s) or organization(s) be included as an additional insured on your policy. Such person(s) or organization(s) is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and

8

advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf in the performance of your ongoing operations for the additional insured.

However, the insurance afforded to such additional insured: . . . (b) [w]ill not be broader than that which you are required by the contract or agreement to provide for such additional insured.

B. With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1. All work, including materials, parts or equipment furnished in connection with such work, on the project . . . to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed.

### D. The Insurance Claim

36. On March 20, 2025, Costco sent a tender of defense demand to Wasatch and Truck Insurance Exchange ("***Truck***")[3], asserting Truck and Wasatch have a duty to defend and indemnify Costco as an additional insured under the Policy in the Boerum Lawsuit.

37. After Costco tendered its demand for defense, Mid-Century investigated the claim by considering the terms of its Policy and the allegations in the Boerum Lawsuit.

38. As stated, the Complaint is void of any mention of snow, ice or any act/omission of Wasatch in its snow removal services; it never mentions Wasatch. Rather, the allegations **only** concern Costco's alleged parking lot design defects.

39. Costco attempted to sidestep this problem by offering: "[t]he offending driver told the responding police that his vehicle skidded on a patch of ice in Costco's parking lot."[4]

---

[3] Truck did not issue the policy issued to Wasatch; Mid-Century was the issuing carrier.

[4] Which mis-quotes the actual police statement provided above.

9

40. Such characterization is contrary to the language in the police report (the Driver stated he "had been backing out of his [parking] stall and when he tried to step on the brake to stop he accidentally stepped on the gas instead. He stated he believed he then hit a patch of ice and slid to his current position.").

41. Costco's suggestion to rely on unpled facts is also contrary to what must be considered in determining whether there is a duty to defend or indemnify.

42. Accordingly, in applying Utah law's eight corners rule, Mid-Century denied Costco's demand concluding Costco was not entitled to insurance coverage or a defense under the plain terms of the Policy, as the Complaint in the Boerum Lawsuit does not allege any potential risks within the coverage of the Policy.

## CLAIM FOR DECLARATORY RELIEF
### (No Coverage Under the Policy)

43. Mid-Century incorporates each of the allegations set forth above as though fully set forth herein.

44. An actual dispute and controversy have arisen between Mid-Century and Defendants regarding whether there is coverage for the claims asserted in the Boerum Lawsuit.

45. Utah has adopted the "eight corners" rule (the four corners of the policy and the four corners of the complaint) to determine whether an insurer's duty to defend has been triggered.

46. The Complaint's allegations address only Costco's alleged parking lot design defects and not improper snow or ice removal.

47. In fact, the Complaint is void of any mention of snow, ice or Wasatch.

48. Wasatch is not named in the Complaint—clearly because the Boerum Lawsuit Complaint is centered on Costco's alleged defective parking lot design, not improper snow or ice removal.

49. Thus, even if all allegations in the Complaint are proven to be true, under Utah law and the Policy, there would be no insurance coverage for the Boerums' claims against Costco.

50. The Boerums also seek punitive damages against Costco which are not insurable in Utah.

51. In addition, the Policy includes the Multiple or Enhanced Damages Exclusion which excludes coverage for multiple damages and penalties.

52. Accordingly, the Court should issue a declaratory judgment declaring the Policy does not provide coverage for Costco or Wasatch as it relates to the Boerum Lawsuit and Mid-Century has no duty to provide a defense to Costco or Wasatch in the Boerum Lawsuit.

53. To the extent the Boerums have valid claims against Costco, the Court should further issue a declaratory judgment that Mid-Century is not required to indemnify Costco or pay any settlement or judgment to the Boerums on behalf of Costco.

## PRAYER FOR RELIEF

WHEREFORE, Mid-Century prays for the following relief:

1. For declaratory judgment providing:

    a. There is no coverage under the Policy for any claims, causes of action, or demands for damages asserted by the Boerums against Costco.

    b. To the extent the Boerums have valid claims against Costco or Wasatch, Mid-Century is not required to indemnify Costco or pay any settlement or judgment to the Boerums.

    c. There is no duty on the part of Mid-Century to defend Costco or Wasatch in the Boerum Lawsuit.

    d. For any other related declarations necessary to effectuate the terms of the Policy.

2. For reasonable attorneys' fees, costs, and expenses of litigation, as determined at the time of judgment.

3. For pre- and post-judgment interest as applicable by law.

4. For any such other relief as the court may deem just and proper under the circumstances.

DATED: September 17, 2025    PIA HOYT, LLC

              */s/ Adam L. Hoyt*
              Adam L. Hoyt
              Scott R. Hoyt

              *Attorneys for Plaintiff*